**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

CASE NO.:

**STEPHEN SPINALE,**

　　Plaintiff,

v.

**UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD., A Florida Limited Partnership,**

　　Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.　Plaintiff, STEPHEN SPINALE ("Mr. Spinale" or "Plaintiff"), brings this action pursuant to the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, et seq. ("the FMLA") to recover from Defendant for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, front pay, declaratory relief, and reasonable attorneys' fees and costs.

**JURISDICTION**

2.　The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1337 and the FMLA and the authority to grant declaratory relief under the FMLA, and pursuant to 28 U.S.C. § 2201 et seq.

**PARTIES**

3.　At all times relevant hereto, Plaintiff was an employee of Defendant, and resided in Orange County, Florida.

4. Plaintiff worked for Defendant in Orange County, Florida, and the venue, therefore, for this case is the Orlando Division of the Middle District of Florida.

5. At all times relevant hereto, Defendant was an employer covered by the FMLA, because it was engaged in commerce or in an industry affecting commerce who employed 50 or more employees within 75 miles of where Plaintiff worked, for each working day during each of 20 or more calendar workweeks, prior to seeking leave under the FMLA.

6. At all times relevant hereto, Plaintiff was an employee entitled to leave under the FMLA, based on the fact that he: (a) suffered from a serious health condition as defined by the FMLA which necessitated FMLA leave; (b) was employed by Defendant for at least 12 months prior to necessitating FMLA leave; and (c) worked at least 1,250 hours during the relevant 12-month period prior to her seeking to exercise his rights to FMLA leave.

7. Mr. Spinale worked as a Fiberglass Technician for Defendant from May 2, 2005, until his termination on October 12, 2018.

8. During his long tenure, Mr. Spinale was an excellent employee, whose hard work and professionalism made him a valued contributor.

9. Unfortunately, in August 2015, Mr. Spinale was involved in a car accident and suffered severe injuries to his hip and back.

10. Accordingly, Mr. Spinale requested, and was approved for, FMLA leave from work in August 2015 for back and hip surgery.

11. He subsequently recertified for intermittent FMLA for flare-ups related to his serious health condition upon his return to Universal in March 2016.

12. Mr. Spinale recertified his FMLA each year thereafter, and his final recertification was approved on July 29, 2018.

13. Mr. Spinale never suffered discrimination/interference based on his disability and/or need for FMLA leave from Defendant until Shawn Lynns was transferred to the Fiberglass Department in 2018.

14. Sadly, from that point on, on multiple occasions leading up to Plaintiff's termination in October 2018, Mr. Lynn and Manager, Gary Turner, interfered with, and retaliated against, Mr. Spinale based on his continued need for FMLA leave.

15. Defendant utilizes a "no-fault" attendance policy where employees are deducted "points" for absences, late arrivals, or early departures.

16. Once an employee accumulates a certain amount of points, that employee can lose the opportunity for a promotion or transfer and can even suffer termination.

17. Accordingly, in September 2018, Mr. Lynns confronted Mr. Spinale regarding an alleged number of point deductions for medical related absences on his record.

18. However, after being reprimanded by Mr. Lynns, Mr. Spinale investigated this surprise allegation and discovered that multiple points had been deducted from his record on days that Mr. Spinale had notified the Benefits Department about a flare-up related to his serious health condition, and therefore these points were associated to absences that should have been FMLA covered/protected.

19. Upon realizing same, Mr. Spinale immediately objected to the company's unlawful interference/retaliation of his FMLA covered absences, and the company's failure/refusal to protect his FMLA rights to Mr. Lynns, Mr. Turner, and Human Resources Representative ("HR"), Chris Buse ("Mr. Buse").

20. However, instead of remedying this situation, at a staff meeting the very next day, Mr. Turner responded to Mr. Spinale's concerns by announcing that, "if anyone uses FMLA in any given month, you won't get your points back for that month."

21. In other words, what Mr. Turner was saying was that when an employee exercised his/her FMLA rights, points would still be deducted from the employees' attendance file for the absence/tardy for which FMLA was used.

22. This policy by Defendant was/is blatantly unlawful, as it interfered with Mr. Spinale's exercise of his FMLA rights, as any employee on FMLA who used their federally-protected leave would nevertheless be penalized for, what should have been, protected absences.

23. Furthermore, FMLA regulations prohibit an employer from counting FMLA as a negative factor under a no-fault attendance policy as Defendant attempted to do here. *See* 29 C.F.R. § 825.220(c).

24. As a result of this policy, Mr. Spinale's FMLA rights were violated.

25. Unfortunately, on October 4, 2018, prior to the beginning of his shift, Mr. Spinale began to experience a flare-up related to his serious health condition, and he suffered the ultimate consequence of his superiors' discriminatory and unlawful stance toward FMLA leave.

26. On that day, Mr. Spinale immediately contacted Defendant's Benefits Department to notify them of his flare-up and advise that he would be arriving late to work as a result of his same and invoked his FMLA rights, accordingly.

27. Unfortunately, upon arrival to work, Mr. Spinale's pain did not subside and he was forced to leave work early.

28. However, despite following the proper procedures for use of his FMLA during moments of flare-ups, Mr. Spinale was afterwards reprimanded and deducted three (3) points from

his employee file by Mr. Lynns - one point for being late, one point for leaving early, and one point for not calling an hour before his shift.

29. Upon learning of this, Mr. Spinale immediately complained to Mr. Lynns regarding his three (3) point deduction, and cautioned Mr. Lynns that punishing him or otherwise adversely affecting his employment because of his need for FMLA leave violated the law.

30. Mr. Lynns simply responded, "You don't have FMLA. If you do, you have to clock out and go to the Benefits Department and prove it to me."

31. Despite the odd demand to clock out in order to show proof that he is covered under the FMLA, Mr. Spinale immediately complied with this request and provided documentation to Mr. Lynns demonstrating his FMLA eligibility and approval.

32. However, despite providing proof of FMLA coverage, Mr. Lynns only returned 2.5 points out of the 3 points deducted from Mr. Spinale's record.

33. Therefore, on October 12, 2018, Mr. Spinale requested from Defendant's Benefits Department a list of all his FMLA approved absences in order to demonstrate that his absences were FMLA approved and recover all the points taken against him for same.

34. After receiving his personnel file, Mr. Spinale confirmed that multiple absences that were FMLA covered/protected had been counted against his record.

35. Mr. Spinale then used this record to object to Mr. Turner, Mr. Lynns, and Defendant's HR representative, Mr. Buse in a meeting that same day, regarding these unlawful deductions and their effect on his employment record.

36. However, instead of investigating this issue, upon receiving Mr. Spinale's objection, Mr. Buse, Mr. Turner and Mr. Lynns immediately demanded that Mr. Spinale take a drug test. T

37.     his came as a complete shock to Mr. Spinale, and he asked "Why do I need to take a drug test? I'm only asking for my points back."

38.     Mr. Turner harshly replied, "Because you're acting funny."

39.     Hoping to receive his points back by complying with this order, Mr. Spinale agreed to take this first ever, surprise, and clearly retaliatory, drug test.

40.     Mr. Spinale was then escorted by Mr. Lynns and two (2) security guards to the medical office on Defendant's property.

41.     Upon arrival, Mr. Spinale noticed that it was after 4:00PM and his shift ended at 4:30PM.

42.     He therefore informed Mr. Lynns that he needed to retrieve his personal items from his locker before the drug test, because his shift would end by the time he returned from the drug test.

43.     Mr. Lynns followed Ms. Spinale to retrieve his personal items from his locker.

44.     However, and quite surprisingly, while the pair returned to the medical office, Mr. Lynns shockingly informed Mr. Spinale that the company had decided to terminate his employment because he "refused" to take the drug test – a test that he had just moments before agreed to take.

45.     Clearly, this surprise termination had nothing to do with a drug test but instead his objections to Defendant's illegal FMLA interference and retaliation.

46.     As a result of this illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration to which he is entitled.

47. As a result of the foregoing, Defendant interfered with Plaintiff's FMLA rights, and retaliated against him for utilizing what should have been proper and authorized FMLA leave, and objecting to Defendant's misconduct regarding same.

48. Moreover, because Defendant acted with intent to interfere with, and otherwise retaliate against Plaintiff for his use of what should have been protected FMLA leave and his objection to Defendant's penalizing him for same, Defendant's actions likewise constitute FMLA retaliation.

49. The timing of Plaintiff's use of what should have been protected FMLA and objections to Defendant's misconduct regarding same, and Defendant's termination of him, alone demonstrates a causal connection between his FMLA leave and these illegal actions taken by Defendant against him.

50. Defendant purposefully and intentionally interfered with, and retaliated against Plaintiff, for use of FMLA protected leave and objections to Defendant's misconduct regarding same.

51. Defendant did not have a subjective or objective good faith basis for its actions, and Plaintiff is therefore entitled to liquidated damages.

**UNLAWFUL INTERFERENCE & RETALIATION UNDER THE FMLA**

52. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-51, above.

53. At all times relevant hereto, Plaintiff was protected by the FMLA.

54. At all times relevant hereto, Defendant interfered with and retaliated against Plaintiff based upon Plaintiff's exercise of his FMLA rights.

55. At all times relevant hereto, Plaintiff was protected from interference/retaliation under the FMLA.

56. At all times relevant hereto, and for purposes of the FMLA retaliation claim, Defendant acted with the intent to retaliate against Plaintiff because Plaintiff exercised his rights to take approved leave pursuant to the FMLA and objected to Defendant's misconduct regarding same.

57. As a result of Defendant's intentional, willful and unlawful acts by interfering with, and retaliating against, Plaintiff for exercising his rights pursuant to the FMLA and objecting to Defendant's misconduct regarding same, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

58. As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated this 2nd day of April, 2019.

Respectfully Submitted,

*/s/ Noah Storch*
Noah E. Storch, Esq.
Florida Bar No. 0085476
Email: noah@floridaovertimelawyer.com

RICHARD CELLER LEGAL, P.A.
10368 W. SR. 84 #103
Davie, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771

*Attorneys for Plaintiff*